Judgment reversed and new trial granted, costs to abide event.

---

ROBERT J. HAYDEN, Respondent, *v.* THOMAS C. PLATT and Another, as Receivers of the New York and New England Railroad Company, Appellants.

*Duty of a railroad company to provide safe appliances.*

A railroad company is bound to provide reasonably safe appliances for its employees, and the employees have a right to act in reliance upon the performance of this duty by the employer.

APPEAL by the defendants, Thomas C. Platt and another, as receivers of the New York and New England Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 25th day of September, 1894, upon the report of a referee.

*James R. Soley,* for the appellants.

*Ward & Morschauser,* for the respondent.

PRATT, J.:

The elaborate opinion filed by the referee so completely covers the facts as to render further discussion unnecessary.

We do not see that the plaintiff was guilty of contributory negligence, and the amount of damages is not excessive.

The judgment should be affirmed.

CULLEN and DYKMAN, JJ., concurred.

Judgment affirmed, with costs.

The opinion of the referee was as follows:

J. F. BARNARD, Referee:

On the 11th March, 1894, the plaintiff was a brakeman on the defendants' road. The train on which he was employed left Hopewell on this morning and went east. Just as the train reached the top of the hill near Reynoldsville it became necessary to cut off the engine which was pushing in the rear and to continue on without it. A brakeman left the caboose car, which was the rear car of the regular train, and went on top of the cars, and presumably set the brakes lightly, so as to meet a down grade to Reynoldsville, where a switch was to be thrown, so as to make a fly of the caboose. The plaintiff was a brakeman of the rear end; this position made him a flagman as well. He was stationed on the pushing engine; his duty was to cut off the engine and pass on to the regular train and signal the fact of the cutoff to the engineer. When he cut off the pusher engine and passed to the caboose and to the box car ahead of it, he saw that the brake was set so hard on the box car as to stop entirely the revolution of the wheels, which was against the rules of the company under the circumstances. He got up on the box car and proceeded to loosen the brake. This brake was of the kind commonly used on freight cars. There was a brake staff, and the brake was compressed upon the wheel by a chain wound around the brake staff, which was of iron and moved by a round lever on the top of it, and held in place by a ratchet and dog. The plaintiff put his foot so as to loosen the dog from the ratchet and applied the lever. The iron wheel at the first touch flew from its place. It was necessary for the plaintiff to tighten the brake a little to release the dog, and the sudden failure of the brake wheel lever threw the plaintiff from the train to the ground. He struck upon his back. The train was running from fifteen to eighteen miles an hour. The accident was caused by the absence of a nut from the top of the brake staff which held the lever fast to it. The brake in this connection was

unfit for the purposes and dangerous to the brakeman who used it. The company was bound to provide reasonably safe appliances for the purpose of the employment. The inspection proven at Hopewell was of no use. A man walked up and down on the ground, and, while he says he could see the washers under the brake lever, he does not say he could see the nut on top, and manifestly he could not see it. The inspection was incomplete and his inspection useless. The accident could not have happened if he had done his duty with intelligence. Another inspection was proven at Newburgh on the day before. The object of this inspection was to see if repairs were needed, so that they could be made in the Erie Company's repair shops before the car was transferred to the defendant's road. This inspector went on top of the cars and found, he says, everything right. A well-secured nut on the brake staff would not have given away in the few miles' run between this inspection and the accident. It did give way, not by violent use, and this fact must be taken into consideration in determining the credit to be given to this inspector at Newburgh. The inspection was either not made, or made so carelessly as to be of no use. It could not have been made under the proof. This inspector only testifies to a custom, and not from remembrance of this particular car on the train.

The plaintiff was guilty of no negligence on his part. He could reasonably rely upon the performance of the master's duty. He was bound with the utmost vigilance to use his faculties to protect himself from danger, but this occasion was urgent, and the accident happened quite early in the morning of March 11, 1894. The brake lever was made for the purposes of such use as he put it to. The washer was on the top of the brake staff. Under those circumstances the plaintiff was not guilty of negligence contributing in any way to the accident. The action is, therefore, made out, and the plaintiff is entitled to recover his damages. The proof shows that he was confined to his sick room from the 11th of March to the 5th of April, 1894. He was then moved to his home on Long Island. He has not been able as yet to do any work. He made an effort to do some plain painting, but he could not stoop, and the effort hurt him so that he had to stop. He was well before the accident. He has night sweats, has pain in the back and through the hips. The injury was no greater than would be reasonably

expected from the accident. A fatal result would not have been deemed unusual. The physicians differ as to the permanence of the injury, while there is no difference as to the severity of it. Dr. Powell thinks a cure will take place, but it will take a long time to effect one. Dr. Wilson agrees with him. Dr. Sutton testifies to a great improvement, but that it will take a long time to cure the plaintiff, and he even expresses a doubt whether the injury is not a permanent one.

Drs. Van Wyck and Conklin testify that the injury is neither permanent nor will it probably be long continued; indeed, that the complete restoration is now reached, or nearly so. Under this proof, I think that the improvement has been marked and steadily continued, but the evidence does not warrant a finding that the injury received will be permanent. It will still take a long time to reach a complete restoration.

I estimate the damages to plaintiff from the injury at $2,500, and order judgment for this amount against the defendants, with costs.